**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| Plaintiff, | |
| v. | Case No. 1:20-CR-00688 |
| HYTERA COMMUNICATIONS CORPORATION LTD., et al. | Honorable John J. Tharp Jr. |
| Defendants. | |

**DEFENDANT HYTERA COMMUNICATIONS CORP. LTD.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ENTRY OF A PROTECTIVE ORDER**

Defendant Hytera Communications Corporation Ltd. ("Hytera") respectfully files this memorandum in support of its motion for entry of a protective order, pursuant to the Court's Order dated November 30, 2022 (Dkt. 76). For the reasons set forth herein, Hytera requests that the Court enter Hytera's proposed protective order attached as Exhibit A.[1]

## I. INTRODUCTION

After months of negotiations, and despite many significant compromises by Hytera, the government—at Motorola's behest—continues to insist on including unconstitutional and unfairly burdensome restrictions on Hytera's ability to both review discovery in this matter, and to work with outside experts to prepare its defense. The government claims that its motivation is to help enforce Motorola's intellectual property rights. But Motorola's motivation is something else entirely—to undermine Hytera's ability to defend itself in a variety of fora, including this case.

---

[1] The government's proposed protective order is attached as Exhibit B.

Motorola's true goal is revealed by several inappropriate demands that it and the government are making. Some encroach upon the attorney-client privilege, such as the demand that Hytera maintain a log reflecting when its outside counsel reviewed discovery materials, and a list of the specific discovery materials viewed. *See* Ex. B at § 3. Other provisions violate Hytera's due process right to present a complete defense, such as those that require Hytera to disclose the identity of all experts (not just testifying experts) who will review discovery (not just source code), *and provide the government and Motorola with veto power over Hytera's choice of experts*. *See* Ex. B at § 2(d). There is no basis to allow the government and Motorola to have such insight into and influence over how a criminal defendant prepares its defense.

Likewise, the government's request to force all Hytera employees to review discovery only at Steptoe & Johnson LLP's offices is unfairly burdensome and violates Hytera's Sixth Amendment rights. Steptoe has two offices in China—one in Beijing, and one in Hong Kong. Traveling from Shenzhen, where Hytera is located, to Beijing would require a 1200-mile airplane flight. Traveling between Hong Kong and China would require a two-hour drive each way through customs, complete with ever-changing COVID lockdowns, quarantine requirements, and even a quota system that allows only a certain number of travelers between China and Hong Kong.

Motorola's efforts to inject itself into these issues is particularly galling given that there has already been a four-month public trial in the civil case during which the alleged trade secrets were extensively discussed and published. Moreover, Motorola's alleged trade secrets are, to put it bluntly, yesterday's news—they are alleged to be at issue in radios that Hytera launched more than a decade ago. Hytera has since developed a new generation of radios that use substantially different hardware and software. Moreover, pursuant to Judge Norgle's express authorization in a royalty order, Hytera is continuing to sell the old accused products—albeit at steadily decreasing

rates following the launch of its new products—such that there is no risk that Hytera would somehow use the discovery materials here for development purposes rather than in preparing its defense. Finally, the core discovery in the criminal case consists primarily of new materials that were not part of the civil matter, and over which Motorola has no ownership interest, such as personal emails belonging to the individual defendants and the government's investigative reports. With respect to the most sensitive information, Motorola's source code, Hytera has already agreed to include substantial restrictions around its viewing.

At bottom, Hytera appreciates that Motorola wishes to keep confidential certain aspects of its intellectual property, which is why Hytera has already agreed to many restrictions, especially around source code information. But Hytera has been indicted, and it has a Due Process right to prepare a complete defense, which includes receiving significant access to discovery. *See Crane v. Kentucky*, 476 U.S. 683, 690 (1986) ("the Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense" (internal quotation omitted)); *see also* U.S. CONST. amend. V and VI. The government and Motorola's attempts to interfere with Hytera's defense are fundamentally unfair, and Hytera respectfully requests that the Court adopt the protective order it has proposed at Exhibit A.

## II.     BACKGROUND

### A.     Civil Case

In March 2017, Motorola filed a civil action in this District against Hytera and two subsidiaries alleging misappropriation claims under the federal and state trade secret acts (DTSA and ITSA), and under the Copyright Act. *See Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, No. 1:17-cv-01973 (N.D. Ill.). An agreed protective order was filed in the case on November 27, 2018. *See* Modified Agreed Confidentiality Order (Civil Dkt. 358). On February 14, 2020, following a

3

jury trial that spanned nearly four months, the jury entered a verdict in Motorola's favor, awarding Motorola compensatory and punitive damages in the amount of $764 million. (Civil Dkt. 898).

Over the two years that followed, a number of post-judgment motions were adjudicated. The court reduced the total damages award to $543.7 million. (Civil Dkt. 1099). The court also denied Motorola's motion for a permanent injunction, and instead ordered an ongoing royalty on future sales of the accused Hytera products. (Civil Dkt. 1349).

In August 2022, following entry of the final amended judgment, both parties filed notices of appeal. (Civil Dkt. 1356, 1364). The appeal is pending before the Seventh Circuit, with briefing underway. *Motorola Sols., Inc. v. Hytera Commc'ns Corp.*, No. 22-2370 (7th Cir. 2022). The district court deferred ruling on enforcement of the judgment while the case is on appeal.

### B. The Indictment

The Indictment in this case charges Hytera and seven former employees (the "individual defendants") with 21 counts of violating 18 U.S.C. § 1832, the Economic Espionage Act. (Dkt 12). Specifically, the Indictment alleges that between 2007 and 2010, Hytera "recruited and hired" the individual defendants from Motorola in Malaysia, directed them to take trade secret information from Motorola, and then used that information to "accelerate the development" of Hytera's digital mobile radio products, which were manufactured in China. *Id*. at 12.

### C. Discovery Materials

To date, the government has produced or designated close to 7.5 million pages of discovery. The discovery includes approximately 7 million pages of materials that Motorola previously produced to the government, from the more than 50 million pages the parties collectively produced in the civil case. The government also produced approximately 300,000 "new" pages of discovery to Hytera that were not part of the civil case. This important new discovery consists primarily of (1) emails from personal email accounts belonging to the individual

defendants, and (2) government investigative materials, including FBI 302 reports, search warrant and other court applications and orders, and subpoena materials.

During negotiations with the government over the protective order in this case, defense counsel asked the government to redact the "new" materials it believed contained sensitive information so that Hytera employees (including in-house counsel) could be provided redacted copies of discovery to review.  The government refused.

## III.    DISCUSSION

### A.    The Government Cannot Meet its Burden of Showing "Good Cause" to Justify the Unconstitutional Restrictions it Seeks

The government bears the burden of showing "good cause" to justify the restrictions it seeks as part of its proposed protective order.  *See* Fed. R. Crim. P. 16(d)(1) ("Protective and Modifying Orders.  At any time the court may, for good cause, deny, restrict, or defer discovery or inspection, or grant other appropriate relief."); *United States v. Yassine*, 574 Fed. Appx. 455, 461 (5th Cir. 2014).[2]  Hytera has the burden of showing that the challenged provisions would cause prejudice.  *Id.*

To meet its burden of showing of good cause, the government must show that disclosure of the relevant materials to Hytera will result in a "clearly defined and serious injury," and the government must point to "specific demonstrations of fact."  *Glob. Material Techs., Inc. v. Dazheng Metal Fibre Co.*, 133 F. Supp. 3d 1079, 1084 (N.D. Ill. 2015) (quotations and citations omitted).  The "harm must be significant, not a mere trifle."  *Id.* (quoting *Cipollone v. Liggett Grp., Inc.*, 785 F.2d 1108, 1121 (3rd Cir.1986)).  Conclusory statements—including "broad allegations

---

[2] The "good cause" standard applies to protective orders sought in both criminal and civil cases. *See, e.g.*, Fed. R. Civ. P. 26(c)(1) ("The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense"). Thus, both civil and criminal caselaw analyzing the good cause standard are relevant.

of potential harm" or "competitive injury"—are insufficient to meet the good cause standard. *Id*. (quotations and citations omitted).

Relatedly, courts note that the Attorneys Eyes Only designation should "only be used on a relatively small and select number of documents where a genuine threat of competitive or other injury dictates such extreme measures." *Id*. (quotations and citations omitted). Such designations "must be used selectively because discovery and trial preparation are made significantly more difficult and expensive when an attorney cannot make a complete disclosure of relevant facts to a client and because it leaves the litigant in a difficult position to assess whether the arguments put forward on its behalf are meritorious." *Id*. (citation omitted).

**B.      Hytera Has Already Agreed to Many Restrictions Proposed by the Government and Motorola**

Over the past several months, Hytera has agreed to a number of restrictions proposed by the government at Motorola's behest, including the following:[3]

      **1.      Disclosing Hytera Employees:**  The government requested that the Outside Counsel Defense Team disclose the "names, job titles, and job descriptions" of any Hytera employees, including in-house legal counsel, who will review the discovery materials. Hytera agreed to this request. *See* Ex. A at § 2(f).

      **2.      Government's Right to Object to Hytera Employees:**  Relatedly, the government also requested the right to object to the proposed review of materials by specific Hytera employees. Although Hytera found this request to be objectionable, in the spirit of compromise, Hytera ultimately agreed to it. *See* Ex. A at § 2(f).

---

[3] Large portions of the parties' proposed protective orders are not in dispute, including . §§ 1-2(c) and 6-15 of each order.

3.      **Restricting Access for Hytera Employees:**   The government further sought to limit Hytera employees' ability to download, copy, or otherwise retain any of the discovery materials or information contained therein.  Despite the logistical issues this restriction will create, Hytera agreed to this request.  *See* Ex. A at § 2(f).

4.      **User Accounts and Access Logs:**  The government requested that anyone who will review discovery be assigned an individual user account that logs all discovery access.  Hytera agreed to this request as it applied to Hytera employees (but not outside counsel). *See* Ex. A at § 3.

5.      **Storing Discovery Materials in the United States:**   The government requested that all discovery materials remain on servers located in the United States. Hytera agreed to this request.  *See* Ex. A at § 3.

6.      **Acknowledgement Forms for All Individuals:**   The government requested that every individual who accesses the discovery materials, including the Outside Counsel Defense Team, sign a form acknowledging the protective order.  Hytera agreed to this request.  *See* Ex. A at § 4.

7.      **Disclosure of Third-Party Requests or Demands:**   The government requested that the Outside Counsel Defense Team disclose any third-party requests or demands for discovery materials.  Hytera agreed to this request.  *See* Ex. A at § 5.

8.      **Disclosing Experts for Potential Source Code Review:**  The government requested that Hytera specifically identify whether an expert will review materials containing Motorola's source code.  The government also sought the right to object to an expert's review of the source code information.  Hytera agreed to both these provisions. *See* Ex. A at § 2(d).

9. **Source Code Log:** The government requested that the Outside Counsel Defense Team maintain a source code log identifying all individuals who review source code materials, and that the log be produced to the government upon request. Hytera agreed to this request. *See* Ex. A at § 7(d).

10. **Additional Source Code Review Restrictions:** The government requested that with respect to discovery materials containing Motorola source code information, only the Outside Counsel Defense Team be permitted to review the materials (unless such materials are being provided to a disclosed expert), and requested that the materials only be made available for review at the government's office in Chicago. Hytera agreed to these requests. *See* Ex. A at § 7. The government also made several additional requests regarding source code materials, including that: (1) only limited portions of one hard copy of source code is permitted to be received by the Outside Counsel Defense Team; (2) the government has the right to object to any requests for such a copy; (3) copies of source code materials must be kept in a secure location; and (4) only a limited number of additional paper and electronic copies are permitted. Hytera has agreed to each of these requests. *See* Ex. A at § 7(a)-(c).

## C. The Government Has Proposed Several Additional Restrictions that Are Patently Unconstitutional and Unduly Burdensome

Despite the numerous concessions already made by Hytera, the government has insisted on several additional restrictions on Hytera's access to discovery that are patently unconstitutional and unduly burdensome. Hytera asks the Court to reject these proposals. *See United States v. O'Keefe*, No. 06-0249, 2007 WL 1239204, at *2 (D.D.C. Apr. 27, 2007) ("Protective orders are expressly designed to assure that a defendant's right to a fair trial are not overridden by the confidentiality and privacy interests of others."); *United States v. Darden*, No. 3:17-cr-00124, 2017

WL 3700340, at *2 (M.D. Tenn. Aug. 28, 2017) (finding that the government's proposed protective order made "no effort to strike a balance between the[] competing concerns" of witnesses' safety and defendants' right to meaningfully participate in their defense).

### 1. Preventing Hytera from Retaining Certain Experts

In a naked attempt by Motorola to hinder Hytera's ability to defend itself, the government is seeking to prohibit Hytera from hiring certain categories of experts, namely, anyone that was previously—or may be in the future—affiliated with Hytera, Motorola, or a competitor. The government's proposed restriction reads:

> *Any consultant, investigator or expert identified by the Outside Counsel Defense Team may not be a current officer, director, or employee of the defendant or Motorola or of a competitor of the defendant or Motorola, nor anticipated at the time of retention to become an officer, director, or employee of the defendant or Motorola.*

Ex. B at § 2(d). No rational basis exists for preventing Hytera from hiring experts affiliated with itself, Motorola, or the two companies' competitors. *See Crane*, 476 U.S. at 690; *see also* U.S. CONST. amend. V, VI.

As an initial matter, Hytera cannot be prohibited from retaining an expert affiliated with *its own company*. To the extent the government's concern pertains to source code, Hytera has already agreed to notify the government before any expert would be permitted to review source code materials.

Next, Motorola seeks to prohibit Hytera from hiring experts that may have been previously—or might in the future be—affiliated with Motorola. But it is unclear how showing discovery to an expert that has been or might be affiliated with Motorola would harm *Motorola*, particularly if Hytera were not showing that expert source code.

Third, with respect to prohibiting Hytera from hiring any expert affiliated with any potential Motorola competitor, there is no basis for such an anti-competitive restriction, especially

where Hytera has agreed that experts would not be permitted to review source code materials absent disclosure of their identities to the government and Motorola. *See, e.g., Motorola, Inc. v. Lemko Corp.*, No. 08 C 5427, 2010 WL 2179170, at *3 (N.D. Ill. June 1, 2010) (allowing disclosure of sensitive but dated competitive information to employees of competitor who were subject to non-disclosure/non-use restrictions under the court's protective order) (Kennelly, J.).

Placing these restrictions on Hytera's ability to hire an expert would significantly narrow— if not eliminate—the pool of high-quality experts available to Hytera. The digital mobile radio technology at issue in this case is highly technical and unique, and nearly all experts qualified to consult on these matters are, have been, or might in the future be affiliated with Hytera, Motorola, or a company that competes with them. Accordingly, the Court should reject the government and Motorola's proposal to restrict who Hytera may retain as an expert in this matter.

### 2. Requiring Disclosure of Hytera Experts

Relatedly, the government proposes that Hytera disclose the identities and qualifications of *all* experts that Hytera will retain to review discovery materials in this case (not just source code). The government also proposes that it and Motorola should retain the power to "authorize" Hytera's choice of experts. Specifically:

> *The Outside Counsel Defense Team must provide the government with a copy of the acknowledgement form at least ten days before the first disclosure of the discovery materials to an expert, investigator, or consultant (or member of their staff). The Outside Counsel Defense Team must provide the government with a written identification of the expert, investigator, or consultant and a copy of his or her curriculum vitae at least ten (10) days before any such review. If the government has good cause to object to the review (which does not include challenging the qualifications of the expert, investigator, or consultant), it must serve the Outside Counsel Defense Team with a written objection within ten (10) days after service of the identification. Unless the parties resolve the dispute within ten (10) days after service of the objection, the Outside Counsel Defense Team must move the Court promptly for a ruling, and the source code may not be reviewed by the expert, investigator, or consultant without the Court's approval.*

* * *

10

> *The parties understand that the government will communicate with the victim company, Motorola, on any Defense request for additional individuals to access discovery materials and before authorizing the access discovery materials pursuant to this order.*

Ex. B at §§ 2(d), 2(g).

These requests are nothing more than an effort by the government and Motorola to restrict Hytera's ability to hire the experts of its choice. There is no legal justification for requiring a criminal defendant to disclose to the government and the alleged victim the identity of *all* experts (including non-testifying experts) who will review discovery (not just source code), let alone for providing the government and the alleged victim the ability *to veto* a criminal defendant's choice of expert. *See, e.g.*, *Layne Christensen Co. v. Purolite Co.*, 271 F.R.D. 240, 251 (D. Kan. 2010) (rejecting party's attempt to include protective order provision that required advance disclosure of experts' identity "as an unwarranted intrusion into the party's litigation strategy [that] would provide the opposing party with an unjust advantage.").

### 3. Requiring Hytera Employees to Travel to and Review Discovery Materials Under the Supervision of Outside Counsel

The Constitution requires that the defendant (and not just defense counsel) be permitted to review important discovery materials without undue restrictions on the defendant's ability to comprehend the evidence and participate meaningfully in its own defense. *See Faretta v. California*, 422 U.S. 806, 819 (1975) (the Sixth Amendment "does not provide merely that a defense shall be made for the accused; it grants to the accused personally the right to make his defense"). Yet the government, at Motorola's behest, seeks to make it as difficult as possible for Hytera to review the discovery materials by requiring that *any* Hytera employees, *including in-house legal counsel*, be required to travel to the offices of outside counsel in China to review the materials under the supervision of outside counsel. The government's proposed restriction reads:

11

> *Employees of the defendant may review the discovery materials only in the presence of members of the Outside Counsel Defense Team and from the law offices of Steptoe and Johnson LLP.*

Ex. B at § 2(f). This demand is unworkable for several reasons.

First, the proposed restriction applies to *all* discovery materials—*i.e.*, this is not merely a safeguard for source code materials. There is no basis to place such restrictions on Hytera's right to review materials like FBI 302 reports, court applications and orders, subpoena responses, and the personal emails of the individual defendants, none of which are proprietary to Motorola. *Team Play, Inc. v. Boyer*, No. 03 C 7240, 2005 WL 256476, at *2 (N.D. Ill. Jan. 31, 2005) (by refusing to remove the highly confidential designation from the requested documents, plaintiffs were "attempt[ing] to grossly skew the balance between [defendant's] right to discover relevant information and Plaintiffs' privacy interests") (Bucklo, J.). As noted, in an effort to compromise, Hytera asked the government to redact any sensitive information from these materials so that redacted copies could be shared with Hytera employees. The government refused.

Second, even under normal circumstances, the burden and inconvenience that such travel would place on Hytera employees would be entirely unfair. The volume of material involved would require outside counsel to spend hundreds of hours sitting in a room with different representatives of Hytera over many months. *See, e.g.*, *United States v. DeLeon*, No. CR 15-4268 JB, 2016 WL 7242579, at *32 (D.N.M. Oct. 28, 2016) (modifying protective order to allow defendants independent access to discovery materials so that protective order did not become a "firewall" between Defendants and their counsel "that would effectively separate them from information that is important to their constitutional right of a meaningful opportunity to present a defense.") (quotations and citations omitted).

But now, with an ever-changing array of COVID lockdowns, quarantines, protests, and instability raging throughout China and Hong Kong, the government's proposal is unworkable.

The relevant Hytera employees are located in Shenzhen, where Hytera is headquartered. Outside counsel's offices in China are located in Beijing and Hong Kong. The Beijing Office is approximately 1,200 miles from Hytera's headquarters. Although the Hong Kong office is much closer, approximately 40 miles from Hytera's headquarters, travel between Shenzhen and Hong Kong has always been challenging (requiring at least two hours) due to the customs and visa process. However, because of COVID-related restrictions that are constantly in flux, making that trip during COVID has historically involved quarantine stays at both ends, required testing and medical monitoring, and even a quota system that only allowed a certain number of travelers between China and Hong Kong.[4] In short, requiring Hytera employees to travel to Steptoe's China offices is neither feasible nor necessary.

### 4. Individual User Accounts and Access Logs

When it was originally anticipated that Hytera employees would be independently reviewing the discovery materials through a web-based system like Relativity, Hytera agreed to the government's request to create individual user accounts for each employee and to maintain logs to track all discovery access. *See* Ex. A at § 3. The government's current proposal, however, is no longer limited to Hytera employees, and instead requires user accounts and access logs for

---

[4] *See, e.g.,* South China Morning Post, *Coronavirus: Hong Kong residents may be allowed quarantine-free travel to mainland China 'before Lunar New Year if pilot scheme gets green light'* (Dec. 9, 2022), *available at* https://www.scmp.com/news/hong-kong/health-environment/article/3202670/coronavirus-hong-kong-will-drop-vaccine-pass-scheme-and-covid-app-appropriate-time-senior-health; South China Morning Post, *Everything you need to know about Hong Kong's new Covid-19 regime as city moves to its lowest precaution level since the pandemic hit* (Dec. 14, 2022), *available at* https://www.scmp.com/coronavirus/explainers-faqs/article/3203294/ultimate-guide-dos-and-donts-new-covid-19-regime-after-hong-kong-moves-its-lowest-precaution-level; South China Morning Post, *Beijing hospitals battle staff shortage and patient influx after China's sudden zero-Covid switch* (Dec. 14, 2022), *available at* https://www.scmp.com/news/china/politics/article/3203170/beijing-hospitals-battle-staff-shortage-and-patient-influx-after-chinas-sudden-zero-covid-switch.

*all* individuals who will review the discovery materials, *including the Outside Counsel Defense Team*. The government's proposed provision reads:

> *The Outside Counsel Defense Team will create individual user accounts for each person who views the discovery materials. These materials will be maintained on United States-based servers. The Outside Counsel Defense Team will maintain a log of all access to the discovery materials including: the names of accessing individuals, dates and times of access, and records accessed.*

Ex. B at § 3. This request risks invading Hytera's attorney-client privilege. The government does not have a right to require Hytera to track—and potentially produce in the future—when and how often its counsel have reviewed discovery, let alone which materials Hytera's attorneys have focused on. All of that information is work product. Hytera remains amenable to creating and tracking user accounts and access logs, but only for Hytera employees, not outside counsel. *See* Ex. A at § 3.

### 5. Requiring Disclosure of Acknowledgement Forms, and Allowing the Government to Object to Discovery Access

The government also proposes that acknowledgement forms signed by all individuals—including the Outside Counsel Defense Team—must be disclosed to the government, and that the government and Motorola retain the right to review those forms and object to giving particular individuals access to discovery. The government's proposed provision reads:

> *Prior to their review of the materials, each member of the Outside Counsel Defense Team, employees of the defendant, experts, or any other individual permitted access under this Order pursuant to paragraphs 2(a)-2(f), must sign an acknowledgement of the obligations of this protective order. The acknowledgement form must be provided to the government no later than ten (10) days before disclosure of any Discovery Materials. The government may file an objection to the disclosure within this 10-day period. The parties agree that no disclosures will be made until the Court rules on the objections.*

> \* \* \*

> *The parties understand that the government will communicate with the victim company, Motorola, on any Defense request for additional individuals to access*

14

*discovery materials and before authorizing the access discovery materials pursuant to this order.*

Ex. B at § 4 and § 2(g). This is another example of significant overreach. There is no basis for the government or Motorola to be informed which counsel are reviewing discovery. It should suffice for the Outside Counsel Defendant Team to (1) ensure that all individuals have signed the appropriate acknowledgment before accessing the materials, and (2) to disclose the identities of any Hytera employees who will review the materials.

### 6. Responding to Third-Party Requests

Finally, Hytera agreed to the government's proposal that the Outside Counsel Defense Team disclose any third-party requests or demands for discovery materials. *See* Ex. A at § 6. However, the government is also seeking to include a restriction in the protective order that would prevent Hytera from disclosing discovery materials in response to such requests until the government has had the opportunity to object. Although Hytera agreed that it would not *voluntarily* make such disclosures, Hytera explained that the protective should make clear that Hytera can only agree to not make "voluntary" disclosures. Otherwise, in the case of a seizure or other compulsory request from authorities, Hytera would be forced to choose between violating the laws of the governmental authority seeking the materials, or violating the protective order in this matter. Therefore, Hytera proposes adding the word "voluntarily" to this provision in the protective order. *See* Ex. A at § 6 (". . . and must not *voluntarily* provide any discovery materials in response to such requests or demands for access until the government has an opportunity to object." (emphasis added)).

Hytera also proposes adding language making clear that the protective order does not require Hytera to disobey a lawful order from another forum, as this provision is contained in the protective order in the civil case. *See* Ex. A at § 6 ("Nothing in these provisions should be

15

construed as authorizing or encouraging the Outside Counsel Defense Team or the Defendant to disobey a lawful directive from another court or forum.").

## IV. CONCLUSION

For the foregoing reasons, Hytera respectfully requests that the Court enter Hytera's proposed protective order and prohibit the government from including the unconstitutional and overly burdensome provisions outlined in its proposed order. The alleged trade secrets at issue are more than a decade old, have been displayed and discussed at a four-month-long public trial, and Hytera has been ordered to pay a royalty for continued sales of products allegedly containing them. The unconstitutional overreach proposed by the government and Motorola can thus be attributed to only one thing—a desire to prevent Hytera from defending itself in this criminal case.

Date: December 14, 2022

Respectfully submitted,

/s/ *Rachel M. Cannon*

Rachel M. Cannon
Christopher S. Niewoehner
STEPTOE & JOHNSON LLP
227 West Monroe Street, Ste. 4700
Chicago, IL 60606
Telephone: (312) 577-1300
rcannon@steptoe.com
cniewoehner@steptoe.com

Shawn P. Davisson (*pro hac vice*)
STEPTOE & JOHNSON LLP
1330 Connecticut Avenue NW
Washington, DC 20036
Telephone: (202) 429-3000
sdavisson@steptoe.com

**<u>CERTIFICATE OF SERVICE</u>**

I, Rachel M. Cannon, an attorney, hereby certify that on December 14, 2022, I caused a true and correct copy of the foregoing submission to be served via the Court's ECF system upon all counsel of record.

<u>*/s/ Rachel M. Cannon*</u>
Rachel M. Cannon